[Cite as *Albrecht v. Albrecht*, 2018-Ohio-4664.]

IN THE COURT OF APPEALS

ELEVENTH APPELLATE DISTRICT

TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| RUTHANN D. ALBRECHT, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2017-T-0064** |
| STEPHEN L. ALBRECHT, | : | |
| Defendant-Appellant. | : | |

Appeal from the Trumbull County Court of Common Pleas, Domestic Relations Division, Case No. 2012 DR 297.

Judgment: Affirmed.

*Elise M. Burkey*, Burkey, Burkey & Scher Co., L.P.A., 200 Chestnut Avenue, N.E., Warren, OH 44483 (For Plaintiff-Appellee).

*Michael J. McGee*, Harrington, Hoppe & Mitchell, LTD., 108 Main Avenue, S.W., Suite 500, Warren, OH 44481 (For Defendant-Appellant).

THOMAS R. WRIGHT, P.J.

{¶1} Appellant, Stephen Albrecht, appeals the trial court's decision denying his motion for a recalculation of his spousal support arrears and motion for a vocational examination of appellee, Ruthann D. Albrecht nka Ruthann D. Harnett. We affirm.

{¶2} This is the third time this case has been before us. Most recently, we affirmed the trial court's denial of Stephen's motion for a modification of spousal support

and remanded for further proceedings relative to his request for a vocational evaluation of Ruthann. *Albrecht v. Albrecht,* 11th Dist. No. 2015-T-0092, 2017-Ohio-336, 77 N.E.3d 598.

**{¶3}** Stephen's first of two assigned errors asserts:

**{¶4}** "The trial court erred in denying appellant's motion for recalculation of spousal support arrears."

**{¶5}** Appellate courts generally review decisions regarding spousal support for an abuse of discretion. *Robinson v. Robinson,* 10th Dist. Franklin No. 02AP-236, 2002-Ohio-7359, ¶20. An abuse of discretion is a term of art reflecting a court's exercise of judgment that fails to comport with the record or logic. *Ivancic v. Enos*, 11th Dist. Lake No. 2011-L-050, 2012-Ohio-3639, 978 N.E.2d 927, ¶70. "When an appellate court is reviewing a pure issue of law, 'the mere fact that the reviewing court would decide the issue differently is enough to find error (of course, not all errors are reversible. Some are harmless; others are not preserved for appellate review). By contrast, where the issue on review has been confined to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error.'" (Citation omitted.) *Id.*

**{¶6}** While his prior appeal was pending, Stephen filed a motion for relief from judgment seeking the trial court to vacate an order to his employer to make a lump sum payment to Ohio Child Support Payment Central (OCSPC) in the amount of $5,512.58. In support of his motion, Stephen denied the existence of an arrears and claimed the denial of due process.

**{¶7}** The trial court issued this order in response to notice from the Trumbull County Child Support Enforcement Agency (TCCSEA) that Stephen's support payments to Ruthann were in arrears.

**{¶8}** Ruthann had not moved the court for an order directing Stephen to pay an arrears from the 2010 case, and she likewise did not oppose his motion for relief from judgment in which he denies the existence of an arrears.

**{¶9}** The trial court granted Stephen's motion for relief from judgment and vacated its February 17, 2016 judgment ordering his employer to make the lump sum payment to OCSPC. The decision also ordered that the seized funds not be distributed but that the TCCSEA hold the funds until the trial court held a hearing regarding the spousal support arrears.

**{¶10}** On May 9, 2016, the magistrate held a pretrial hearing and noted in his subsequent entry "[t]he issue before the court is whether to disburse funds seized from [Stephen's] employer for alleged arrearages of spousal support. * * * There is also an issue as to whether there is an arrearage, and if so in what amount."

**{¶11}** On November 9, 2016, another hearing was held before the magistrate at which he concluded that he had to hold the arrearage issue in abeyance pending the resolution of the appeal, explaining:

**{¶12}** "This case has a long and fractured history for several reasons. One of the reasons is that there was a prior case that was filed, then Voluntarily Dismissed, but the Orders therein allegedly survived into this case. Thus, there is an issue as to whether there are/were any arrears. Legal counsel submitted Briefs and Stipulations on this issue,

3

but they appear to be in the Court file at the Court of Appeals.  Further, there is an issue w/ TCCSEA issuing a Lump Sum Order."

{¶13}  On May 16, 2017, the court held another hearing.  The magistrate's decision thereafter notes that one of the issues before it was Stephen's claim that he overpaid spousal support due to the improper seizure of his $7,871.85 bonus.  The magistrate sets forth detailed factual findings in support of his decision that the seizure of Stephen's $7,871.85 bonus was proper since an arrearage existed.  The magistrate found that Stephen's spousal support obligation carried over from the first case that was voluntarily dismissed.  The magistrate's June 14, 2017 decision includes the following handwritten findings:

{¶14}  "Def. Husband owed $1,700.00 per month for Temporary Spousal Support (TSS) from Oct. 2010 through July 2012 due to the 2010 case being dismissed on 8/10/12.  However, on 8/3/12 a NEW case was filed which set forth an Order keeping the $1,700.00 per month TSS Order in effect AND stated as part of it Order that Def./husband was to bring ALL COURT OBLIGATIONS TO CURRENT STATUS (emphasis added).  This magistrate can only conclude that the then existing arrearage of $4,804.47 as of 8/10/12 was to survive and be paid by Def./husband as part of the 2012 case.  A review of Def's TSS obligation sets forth that from Oct. 2010 through Dec. 2013 the Def. owed to Plt. the sum of $66,300.00 (39 x $1,700.00).  Based upon a review of the Stipulations and Def's Brief he paid $61,054.26 in TSS, which would result in an arrearage owed by Def. of $5,245.74 without taking into consideration the $7,871.85 seized by the TCCSEA * * *."

4

**{¶15}** The magistrate then examined Stephen's post-decree spousal support payments and explained that commencing November 1, 2014, Stephen's monthly obligation to Ruthann was $2,750, and that the evidence showed an arrearage on his post-decree spousal support payments in the amount of $815.83 as of March 1, 2014. Thus, as of March 2014, Stephen's total arrears was $5,245.74 plus $815.83 or $6,061.57.

**{¶16}** He concludes in part that based on his detailed analysis, "the Def's arrearage of $4,804.47 from the 2010 Case DOES indeed carryover to the 2012 case. The $7,871.85 seized by the TCCSEA was legal/proper and was applied to Def's arrearage, at least in the accounted for amount of $6,519.11 based upon the Stipulations and Def's Brief."

**{¶17}** The trial court adopted and approved the magistrate's decision on June 20, 2017.

**{¶18}** As stated, Stephen argues the trial court erred in carrying the $4,804.47 arrears from the parties' 2010 divorce case forward after it was dismissed, and as such, asserts the seizure of his bonus to pay for this arrearage was improper.

**{¶19}** As Stephen contends, "'the dismissal of a case effectively removes all claims raised therein from the court's jurisdiction and places the parties in a position as if no suit had ever been brought. *Denham v. New Carlisle* (1999), 86 Ohio St.3d 594, 596, 716 N.E.2d 184, citing *DeVille Photography, Inc. v. Bowers* (1959), 169 Ohio St. 267, 272, 159 N.E.2d 443. Accordingly, in cases such as this one, where, the underlying action has been dismissed "without prejudice," a temporary order imposed therein no longer has any effect. See, e.g., *Lilly v. Lilly* (1985), 26 Ohio App.3d 192, 499 N.E.2d 21, (Temporary

5

child support orders no longer in effect after the underlying domestic relations case is dismissed).' *[Michelson v. MicMillan,* 6th Dist. Williams No. WM-05-018, 2006-Ohio-3063, ¶13.]" *Bartlett v. SunAmerica Life Ins. Co.,* 6th Dist. Lucas No. L-09-1124, 2010-Ohio-1884, ¶13.

**{¶20}** "[A] voluntary dismissal without prejudice under Civ.R. 41(A) renders the parties as if no suit had ever been filed. *Denham v. New Carlisle* (1999), 86 Ohio St.3d 594, 596, 1999-Ohio-128. But *see id.* at 597 (clarifying that the dismissal applies only to those parties voluntarily dismissed from the action and not to any remaining parties). Where the dismissal applies to all defendants, it renders a prior interlocutory ruling a nullity. See *Fox v. Kraws,* 11th Dist. No.2009-L-157, 2009-Ohio-6860, ¶14, citing decisions from the Second, Sixth, Eighth, Ninth, and Tenth Districts, all holding that a voluntary dismissal of all defendants renders a prior interlocutory summary judgment ruling a nullity." *Klosterman v. Turnkey-Ohio, L.L.C.,* 10th Dist. Franklin No. 10AP-162, 2010-Ohio-3620, ¶12.

**{¶21}** Civ.R. 75(N)(1), *Allowance of Spousal Support, Child Support, and Custody Pendente Lite,* states:

**{¶22}** "When requested in the complaint, answer, or counterclaim, or by motion served with the pleading, * * * the court or magistrate, without oral hearing and for good cause shown, may grant spousal support pendente lite to either of the parties for the party's sustenance and expenses during the suit * * *."

**{¶23}** "Pendente lite" is Latin for "while the action is pending" and means "during the proceeding or litigation." *Black's Law Dictionary* (10th Ed.2014). Thus, an award of

6

temporary spousal support is an interlocutory order. *Millstein v. Millstein,* 8th Dist. Cuyahoga No. 79617, 2002-Ohio-4783, ¶27. There is no argument to the contrary.

{¶24} Instead, Ruthann counters that the only reason the parties' first divorce case was voluntarily dismissed and refiled was due to the expiration of the Ohio Supreme Court's guidelines governing the time a court has to finalize pending divorce cases. She likewise argues that the instant case was filed before the parties' prior case was dismissed. We, however, are not privy to the substance of the parties' prior divorce case, i.e., case number 2010 DR 254, because the file is not part of the record in this case and the judgment entry of dismissal is also not before us. Regardless, the reason for a voluntary dismissal does not affect the outcome.

{¶25} The initial filings in this case, 2012 DR 297, include a complaint for divorce filed by Ruthann and a motion to reinstate temporary orders filed by her attorney in which she requests temporary spousal support and that Stephen pay her automobile payments. Eleven days later, the trial court issued its temporary orders in this case, ordering in part: "1. Existing spousal support obligation of $1,700 per month shall be by wage withhold. 2. Husband shall bring all Court obligations to current status." This entry does not indicate what "court obligations" means and makes no mention of an arrearage from a prior case.

{¶26} Thereafter, on December 18, 2012, the trial court ordered the TCCSEA to conduct a certified arrearage calculation "on spousal support in this matter *and in 10-DR-254.*" (Emphasis added). Neither party objected to the court's inclusion of the prior case in its calculation request. The arrears summary sheet subsequently filed with the court reflects that in the 2010 case there was a $4,792.82 overpayment. Its states that there

was "zero due" as of November 30, 2012 and that the "[c]alculation does not reflect payment on hold $6,504.02 (2010DR254)." This determination, however, was later deemed erroneous.

{¶27} On January 22, 2013, Stephen filed a motion for the court to adopt the audit and release funds and reestablish temporary support. His motion states in part that the TCCSEA should release his overpayment of support made in the 2010 case in the amount of $6,504.02.

{¶28} On February 28, 2013, a magistrate ordered CSEA to release the funds from the 2010 case to Ruthann's attorney. The amount of funds to be released is not designated in this entry. Thereafter, on April 4, 2013, another magistrate's judgment entry was issued directing the disbursement of the funds received by Ruthann's attorney. It states:

{¶29} "the disbursement as follows: all pending int[erest] and late fees on auto loan, pay Pl $939.33 and send the balance to Def and his counsel. This takes care of all overpayments in case #2010 DR 254. This also takes care of all car payments, int., and late fees up to 4/1/13."

{¶30} Four months later, the parties entered stipulations before the trial court resolving all issues in the case, except "permanent" spousal support. Their stipulations do not reference a spousal support arrears.

{¶31} The final decree of divorce, issued November 20, 2013, states the parties shall abide by the stipulations; it makes no mention of an arrearage. The subsequent judgment entry dated December 9, 2013, governing spousal support notes, "[a]ny

overpayments or arrears under the temporary order of spousal support owed to either party are preserved and due and payable as of the effective date of this Order."

**{¶32}** Neither party raised any issue regarding a spousal support arrearage at the October 1, 2013 trial on spousal support, and neither party raised an arrears as an issue in the prior appeals. *Albrecht v. Albrecht,* 11th Dist. Trumbull No. 2015-T-0092, 2017-Ohio-336, 77 N.E.3d 598; *Albrecht v. Albrecht,* 11th Dist. Trumbull No. 2013-T-0124, 2014-Ohio-5464.

**{¶33}** After the trial court granted his motion to vacate, Stephen filed a brief in support of his position that there was no arrearage.

**{¶34}** The trial court found a $4,804.47 carryover arrearage existed from the prior case based on the trial court's inclusion of the language that "[h]usband shall bring all court obligations to current status." We agree and find no abuse of discretion.

**{¶35}** The trial court's decision finding that "the Def's arrearage of $4,804.47 from the 2010 Case DOES indeed carryover to the 2012 case" is not contrary to law as Stephen argues. Although the dismissal of the prior case rendered the interlocutory orders regarding temporary support no longer effective, this application is prospective only. In *Lilly v. Lilly*, 26 Ohio App.3d 192, 499 N.E.2d 21 (1985), the trial court ordered the husband to continue to pay child support *after* the parties voluntarily dismissed their divorce action. *Lilly* held that the court was without authority to order support after the voluntary dismissal of the case and "as a condition to a Civ.R. 41(A)(2) dismissal." *Id.* at 193. The issue in *Lilly* did not concern temporary support ordered to be paid during the proceedings.

**{¶36}** Thus, assuming there was a gap after the parties' case was voluntarily dismissed and before it was refiled, Stephen would not owe temporary spousal support for this period because the temporary order was no longer valid after the dismissal. *Id.*

**{¶37}** Unlike *Lilly*, however, this case deals with temporary spousal support ordered to be paid *during* the proceedings. It was due at the time it was ordered and remained unpaid upon the voluntary dismissal of the parties' first case. *See Rubalcava v. Hall,* 674 P.2d 767, 769 (Alaska 1983) (finding each installment of a temporary child support order a vested right). None of the cases relied on by Stephen addresses the impact of a Civ.R. 41(A) dismissal on a temporary order of support during the proceedings.

**{¶38}** Moreover, it would be unjust and illogical to conclude that a party could avoid paying a temporary support obligation by voluntarily dismissing their complaint for divorce.

**{¶39}** "A rule denying enforceability of an order which was valid when entered would foster disregard of the court's authority and reward litigants who ignore court orders. * * * If not, temporary support orders could be ignored until the resolution of the underlying cause, defeating the purpose of temporary support payments. Arrears on a *pendente lite* * * * support order should therefore be due despite the dismissal of the underlying * * * suit." *Rubalcava, supra,* at 769.

**{¶40}** The voluntary dismissal did not render the previously ordered temporary spousal payments void and unenforceable. Accordingly, Stephen's first assigned error lacks merit.

**{¶41}** Stephen's second assigned error alleges:

10

{¶42} "The trial court erred in denying defendant's motion for vocation evaluation of plaintiff."

{¶43} Stephen's second assigned error claims the trial court erred on remand by continuing to deny his motion for a vocational evaluation of Ruthann. We disagree.

{¶44} We considered this issue in a prior appeal and found the first two prongs of the applicable test satisfied, i.e., Ruthann's disability is in issue and Stephen moved the court for a vocational evaluation. *Albrecht v. Albrecht,* 11th Dist. Trumbull No. 2015-T-0092, 2017-Ohio-336, 77 N.E.3d 598, ¶43. Thus, we remanded for the trial court to exercise its discretion and determine whether Stephen had established good cause that a vocational evaluation was warranted, explaining:

{¶45} "In an effort to establish 'good cause,' Stephen needed * * * to show that a substantial change in circumstances occurred to satisfy R.C. 3105.18(F). Specifically, he was required to come forward with some evidence tending to show that Ruthann's limitations resulting from her disability had lessened or that her physical condition had improved since the parties' divorce hearing permitting her to work." *Id.* at ¶44.

{¶46} On remand, the magistrate found that upon reviewing the July 1, 2015 transcript of the hearing, Stephen failed to establish good cause. The magistrate found that there was no evidence that Ruthann's limitations had lessened and "no evidence nor testimony that [her] physical condition has improved since 2013." Stephen objected. The trial court agreed with the magistrate and adopted the magistrate's decision.

{¶47} We review this argument for an abuse of discretion. *Id.* at ¶42, citing *Brossia v. Brossia,* 65 Ohio App.3d 211, 215, 583 N.E.2d 978 (6th Dist.1989), citing *In re Guardianship of Johnson,* 35 Ohio App.3d 41, 519 N.E.2d 655 (1987).

{¶48}  The parties were married for 25 years.  Before they were married, Ruthann was in a car accident and suffered a brain stem injury.  She had a few jobs during the marriage but continued to suffer from a lack of balance from the injury.  Ruthann was a stay-at-home mother.  She had taken care of the parties' children, cleaned the home, and managed the marital finances.

{¶49}  At the time of the July 1, 2015 hearing held to address Stephen's motion for a vocational evaluation, Ruthann testified that she lived alone and that she was able to cook, clean, and pay her own bills.  She drove a car and was able to do her own shopping.  There was no testimony or evidence showing that her physical limitations had improved or that she had not previously been able to accomplish these tasks independently.

{¶50}  Further, the parties' adult son testified that his mother's abilities were about the same as they had been during his childhood.  He explained that she was still able to care for herself, cook, clean, and pay the bills as she had done in the past.  And although she has limitations, he confirmed that her abilities were mostly unchanged.  There was no evidence to the contrary.

{¶51}  Thus, because Stephen did not come forward with evidence tending to show that Ruthann's limitations had lessened or that her physical condition had improved since the parties' divorce hearing, we find no abuse of discretion.  His second assigned error lacks merit and is overruled.

{¶52}  The trial court's decision is affirmed.


TIMOTHY P. CANNON, J., concurs,

DIANE V. GRENDELL, J., concurs in judgment only.


12